[8 NE3d 839, 985 NYS2d 463]

LANDAUER LIMITED, Appellant, v JOE MONANI FISH CO., INC., Respondent.

Argued January 16, 2014; decided February 25, 2014

**APPEARANCES OF COUNSEL**

*Clyde & Co US LLP*, New York City (*Diane Westwood Wilson* and *Deborah A. Elsasser* of counsel), for appellant.

*Fox Rothschild LLP*, New York City (*N. Ari Weisbrot* and *Oksana G. Wright* of counsel), for respondent.

MEMORANDUM.

The order of the Appellate Division should be reversed, with costs, and plaintiff's motion for summary judgment in lieu of complaint should be granted.

Plaintiff Landauer Limited (Landauer), a British company, entered into a series of contracts with defendant Joe Monani Fish Co., Inc. (Monani), a New York company, in which it agreed to supply wholesale seafood. The contracts included a clause granting the courts of England exclusive jurisdiction over disputes arising from the transactions. After a controversy arose over the quality of the products Landauer supplied, Monani refused payment, prompting Landauer to commence an action for breach of contract in the English High Court in April 2009. Monani did not appear in the action and a default judgment was entered.

Landauer subsequently attempted to enforce the English judgment in New York, moving for summary judgment in lieu of complaint. Landauer relied on an affidavit of service indicating that process in relation to the English action had been served on Monani pursuant to CPLR 311 (a) (1) by delivery of a copy of the papers to a Monani employee who identified himself as the comptroller of the company. Citing *John Galliano, S.A. v Stallion, Inc.* (15 NY3d 75 [2010]), Landauer further argued that any technical defect in service would not render the judgment unenforceable because New York courts require only that a judgment debtor receive "fair notice" of the action, which standard was met here because Monani had knowledge of the English action before the default judgment, yet allowed the case to proceed in its absence.

Monani opposed the motion for summary judgment, asserting that it had not been properly served because the person who purportedly accepted service was not the comptroller and was unauthorized to receive process on behalf of the corporation. In addition, Edward Monani, the president of the company, denied having had any knowledge that an English action had been initiated until after the default judgment was entered. Landauer responded by submitting copies of email communications indicating that Monani's counsel had actual notice of the English action before entry of the default judgment and had advised Landauer's counsel that Monani did not intend to appear or defend in England. Thereafter, Monani's counsel submitted a

letter to Supreme Court clarifying that he knew about the English action before the English court issued the judgment and indicating that Monani's president did as well, effectively withdrawing the statement to the contrary in the affidavit.

After a traverse hearing, Supreme Court found that Landauer failed to serve Monani pursuant to CPLR 311 (a) (1) because the individual to whom the papers were delivered was a bookkeeper, not the comptroller, and was therefore not an appropriate corporate agent. Based on that determination alone, Supreme Court denied the motion for summary judgment and the Appellate Division affirmed (101 AD3d 653 [1st Dept 2012]), also addressing only the issue of improper service.

We now reverse. Although CPLR article 53 generally provides that a foreign judgment will not be enforced in New York if the foreign court did not have personal jurisdiction over the defendant (CPLR 5304 [a] [2]), an exception may be made if "prior to the commencement of the proceedings [defendant] had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved" (CPLR 5305 [a] [3]) and was afforded fair notice of the foreign court proceeding that gave rise to the judgment. We applied this principle in *Galliano*, where we explained that enforcement of a foreign judgment is not repugnant to our notion of fairness if defendant was a party to a contract in which the parties agreed that disputes would be resolved in the courts of a foreign jurisdiction and defendant was aware of the ongoing litigation in that jurisdiction but neglected to appear and defend. We clarified that, so long as the exercise of jurisdiction by the foreign court does not offend due process, the judgment should be enforced without "microscopic analysis" of the underlying proceedings (*Galliano*, 15 NY3d at 81 [internal quotation marks and citation omitted]).

Here, in its motion for summary judgment, Landauer provided copies of the contracts it entered into with Monani, noting that each contract contained a provision giving the English courts jurisdiction over any disputes arising from the contract. In his affidavit in opposition to the motion, although claiming that he was "unaware" of the provision, Monani's president did not deny having possessed the entire contract and, in fact, relied on an arbitration clause appearing on the same back page as the litigation venue provision in which the parties agreed to arbitrate disputes under the English Arbitration Acts. Moreover, it is apparent from the record that, through its counsel—who was engaged in ongoing negotiations with

Landauer's attorney in an effort to settle the dispute—Monani had ample notice of the English lawsuit before the default judgment was entered (counsel ultimately acknowledged that Monani's president also knew about the litigation). Accordingly, based on our analysis in *Galliano*, Landauer established that the English judgment was enforceable in New York.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Order reversed, with costs, and plaintiff's motion for summary judgment in lieu of complaint granted, in a memorandum.