**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

APRIL 9, 2026

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 9, 2026

SARAH R. PENDLETON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| ALTERNA AIRCRAFT V B LTD., | ) | |
| | ) | No. 103759-7 |
| Respondent, | ) | |
| | ) | En Banc |
| v. | ) | |
| | ) | |
| SPICEJET LTD., | ) | Filed: April 9, 2026 |
| | ) | |
| Petitioner. | ) | |

GONZÁLEZ, J.—Our constitutional system of divided government vests great power in courts. A court may have the power to order a person to appear, to submit to judgment, and to surrender both their liberty and their property. That power must be carefully exercised within the constraints of our laws and our constitutions. Courts must, among other things, constrain themselves to acting in cases where they have jurisdiction.

Jurisdictional constraints differ depending on what the court is being asked to do. Even when a court would not have jurisdiction to decide a dispute, it may, in some circumstances, have jurisdiction to recognize and enforce a judgment

rendered by another court. Under the full faith and credit clause of the United States Constitution, for example, the properly rendered judgments of our sister states may be enforceable in a Washington court even if that Washington court would not have had the authority to render that judgment itself. *See* U.S. CONST. art. IV, § 1. Similarly, the judgments of Washington courts may be enforceable across the United States. *Id.* That mutual recognition is part of our nation's founding compact.

Our constitutions do not direct Washington courts to accord full faith and credit to the judgments of the courts of foreign nations. However, because we live in a world where people, their obligations, and their rights often transcend national borders, Washington courts will, in certain circumstances, recognize those judgments. To guide such recognition, our legislature has adopted the Uniform Foreign-Country Money Judgments Recognition Act, ch. 6.40A RCW.

Under the act, a foreign money judgment creditor may file an action in Washington courts seeking recognition of certain categories of foreign country money judgments when certain conditions have been met. RCW 6.40A.020, .050. Once recognized, a foreign country money judgment is enforceable in our state like a judgment rendered by a Washington court. RCW 6.40A.060(2).

As a general principle, a court has the power to hear cases only when it has jurisdiction over the defendant. We are asked whether judgment creditors bringing

2

recognition actions under the act must, in the absence of general or specific jurisdiction in Washington over the case, establish that the judgment debtor has property in Washington. We conclude that they must. Accordingly, we reverse the courts below and remand for further proceedings consistent with this opinion.

BACKGROUND

SpiceJet Limited, an Indian low-cost passenger airline, leased two Boeing 737-800 airplanes from Alterna Aircraft V B Limited, an Irish company, for about $230,000 a month. Perhaps because of COVID-19 travel restrictions and the large-scale grounding of 737 MAX passenger planes after two of them crashed, SpiceJet soon fell behind on lease payments.

Alterna and SpiceJet attempted to negotiate a resolution for several years. When those negotiations failed, Alterna sued SpiceJet in an English court. English courts were designated in the lease agreements as an appropriate forum to adjudicate disputes. SpiceJet made only a limited appearance after Alterna had filed a summary judgment motion. SpiceJet asked to have that summary judgment hearing adjourned and informed the court it would not be offering evidence. The court declined to do so and entered judgment in Alterna's favor for about $12 million.

Not long afterward, Alterna filed a petition for recognition of the English judgment in the King County Superior Court. Alterna alleged that SpiceJet owned

"cognizable interests in personal property located in King County" that could be applied to satisfy the money judgment, but it did not identify the property or explain how it established jurisdiction. Clerk's Papers (CP) at 2.

SpiceJet made a limited appearance and moved to dismiss under CR 12(b)(2), arguing that Alterna had not shown that SpiceJet has minimum contacts with Washington or other grounds for personal, general, or specific jurisdiction.[1] Alterna argued that there was no constitutional or statutory requirement of jurisdiction to recognize a judgment from a foreign country. In the alternative, Alterna argued that its bare allegation that SpiceJet had personal property in Washington was sufficient to establish jurisdiction. Later, Alterna filed a declaration stating that SpiceJet had a contract with Boeing for 129 airplanes and that it had settled claims with Boeing related to the grounding of 737s after the 2019-20 airplane crashes. Again, it did not explain how these contracts and claims gave rise to property in King County. While Boeing has some operations in King County, Boeing is a Delaware corporation with operations around the world. *See* https://www.boeing.com/company/general-info#global.

The superior court denied SpiceJet's motion to dismiss, and the case proceeded to summary judgment. SpiceJet did not file a formal response and

---

[1] SpiceJet also unsuccessfully argued that service was improper. It has not renewed that argument on appeal.

4

instead filed a brief styled "Notice Relating to Petitioner's Motion for Summary Judgment," where it reasserted its argument that the court lacked personal jurisdiction. CP at 746. Later, SpiceJet filed a declaration from its senior vice president and company secretary, affirming that SpiceJet is not incorporated in Washington, has no offices or employees here, conducts no business here, and has no assets or personal property in the state. The trial judge struck that declaration because it was filed too late to give Alterna an opportunity to respond.

At summary judgment, the superior court concluded that it had jurisdiction to recognize the judgment regardless of whether SpiceJet had property in Washington. The court did not reach Alterna's alternative argument that it had sufficiently established that SpiceJet had property in Washington. The court granted Alterna's motion for summary judgment, recognized the English judgment, and ordered SpiceJet to pay it.

The Court of Appeals affirmed. *Alterna Aircraft V B Ltd. v. SpiceJet Ltd.*, 33 Wn. App. 2d 246, 248, 559 P.3d 1026 (2024). It concluded that a judgment creditor seeking recognition under chapter 6.40A RCW was not statutorily or constitutionally required to show a basis for the exercise of personal jurisdiction. *Id.* at 253-54, 259. The Court of Appeals did not reach Alterna's alternate argument that the allegations and evidence in the record were sufficient to establish

*Alterna Aircraft V B Ltd. v. SpiceJet Ltd.*, No. 103759-7

jurisdiction. *Id.* at 262 n.5 (citing *State v. LG Elecs., Inc.*, 186 Wn.2d 169, 185, 375 P.3d 1035 (2016)).

SpiceJet petitioned for review. Alterna sought conditional review of whether there was a sufficient basis for jurisdiction in the record. We granted SpiceJet's petition for review and denied review of Alterna's conditional issues. 4 Wn.3d 1020 (2025). Professors Aaron D. Simowitz and Linda J. Silberman submitted an amicus brief in support of SpiceJet.

ANALYSIS

We review questions of statutory interpretation, constitutional law, and trial court decisions on CR 12(b)(2) motions to dismiss for lack of personal jurisdiction de novo. *Brown v. State*, 155 Wn.2d 254, 261, 119 P.3d 341 (2005); *LG Elecs., Inc.*, 186 Wn.2d at 176 (citing *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 963, 331 P.3d 29 (2014)). A defendant may challenge jurisdiction before discovery in a motion to dismiss. When, as here, a motion to dismiss is decided without an evidentiary hearing, the plaintiffs need make only a prima facie showing of jurisdiction. *LG Elecs.*, 186 Wn.2d at 176 (citing *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627 (1991)). While the allegations in the complaint are

6

taken as true at the initial motion to dismiss stage, a defendant may renew jurisdictional challenges after discovery has been taken. *Id*. at 183-85.[2]

Alterna contends that it is not required to establish personal or in rem jurisdiction in Washington before a foreign country money judgment may be recognized. It points out that chapter 6.40A RCW does not explicitly require jurisdiction in Washington.

But nothing in the act requires a court to entertain a recognition action when it does not have the jurisdiction to do so. Most relevantly, the act creates two paths to recognition. RCW 6.40A.050. "If recognition of a foreign-country judgment is sought as an original matter, the issue of recognition shall be raised by filing an action seeking recognition of the foreign-country judgment." RCW 6.40A.050(1). This requires a judgment creditor to file an action in court where a court will decide whether to enter judgment. *Id.* A court may enter judgment over a defendant only if it has jurisdiction to do so. In the alternative, "[i]f recognition of a foreign-country judgment is sought in a pending action, the issue of recognition may be raised by counterclaim, cross-claim, or affirmative defense." RCW

---

[2] In this case, we stress that the complaint does not identify the property alleged to be in King County. Alterna's subsequent filings suggest that the property the complaint was referring to relates to contracts between SpiceJet and Boeing. *See* CP at 484-85, 507, 680. We note that neither the complaint nor these later filings establish that SpiceJet has contract- or claims-based property rights in Washington State.

6.40A.050(2). In such a case, jurisdiction will stand or fall with the court's jurisdiction over the underlying action.

Whether foreign court judgments are enforceable in state courts is largely a matter of state law, which in our state has developed under the common law as informed by constitutional limitations. *See Tonga Air Servs., Ltd. v. Fowler*, 118 Wn.2d 718, 726, 826 P.2d 204 (1992). Traditionally, state courts have "required a 'jurisdictional nexus' between the defendant and the forum—either the assets of the defendant must be found in the forum, or the defendant must be subject to personal jurisdiction" before a foreign judgment would be recognized and enforced. Linda J. Silberman & Aaron D. Simowitz, *Recognition and Enforcement of Foreign Judgments and Awards: What Hath* Daimler *Wrought?*, 91 N.Y.U. L. REV. 344, 345 (2016). The American Law Institute has distilled three distinct types of relevant jurisdiction:

> (a) *jurisdiction to prescribe, i.e.*, the authority of a state to make its law applicable to persons or activities; (b) *jurisdiction to adjudicate, i.e.*, the authority of a state to subject particular persons or things to its judicial process; and (c) *jurisdiction to enforce, i.e.*, the authority of a state to use the resources of government to induce or compel compliance with its law.

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES pt. IV introductory note at 231 (A.L.I. 1987).

This distillation is consistent with one of the modern foundational cases concerning a state court's jurisdiction over an out-of-state defendant based on

property in the forum state, *Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977). In *Shaffer*, the court held that the mere presence of property that was unrelated to the controversy was insufficient to justify a court's exercise of jurisdiction over that controversy. *Id.* at 213. Instead, the minimum contacts test articulated in *International Shoe* had to be satisfied before the sequestration action could go forward. *Id.* at 207 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). *Shaffer* also stressed that in rem or quasi in rem jurisdiction "is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner, since [they are] not before the court." *Id.* at 199.

While it was not at issue in *Shaffer*, the court observed in passing:

Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

*Id.* at 210 n.36.

We recognize that courts have read this footnote in two different ways. Some courts have concluded that due process does not require personal jurisdiction or the presence of property in the jurisdiction before a foreign judgment may be recognized. *See Lenchyshyn v. Pelko Elec., Inc.*, 281 A.D.2d 42, 46-48, 723 N.Y.S.2d 285 (2001) (citing *Shaffer*, 433 U.S. 186, and collecting cases); *see also*

*Alterna Aircraft V B Ltd. v. SpiceJet Ltd.*, No. 103759-7

*Abu Dhabi Com. Bank PJSC v. Saad Trading, Contracting & Fin. Servs. Co.*, 117 A.D.3d 609, 610, 613, 986 N.Y.S.2d 454 (2014); *Pure Fishing, Inc. v. Silver Star Co.*, 202 F. Supp. 2d 905, 909-10 (N.D. Iowa 2002) (quoting *Lenchyshyn*, 281 A.D.2d at 47, 49-50).

In contrast, some other courts have concluded that due process requires at least property in the jurisdiction before a foreign judgment or arbitration award may be recognized. As a recent case reasoned:

> [I]t is antithetical to our system of justice to be able to file a suit for recognition of a judgment when the purported judgment debtor has no ties to the state in which recognition is sought, either through assets to attach or seize by enforcement or personal jurisdiction over the judgment debtor.

*Dynaresource de Mex. S.A. de C.V. v. Goldgroup Res. Inc.*, 667 S.W.3d 918, 926 (Tex. App. 2023) (citing *Int'l Shoe Co.*, 326 U.S. 310); *see also Electrolines, Inc. v. Prudential Assur. Co.*, 260 Mich. App. 144, 152, 160, 677 N.W.2d 874 (2003) (quoting 1 RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 481, cmt. g); *accord First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 748, 749 (5th Cir. 2012) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999) (holding a court must have jurisdiction before confirming a foreign arbitration award would be confirmed)).

Alterna argues that the *Lenchyshyn* court is correct and a court's role in recognizing a foreign judgment is essentially ministerial and does not require the

adjudicative jurisdiction of the courts. Alterna analogizes recognition actions under chapter 6.40A RCW to an enforcement action of a judgment entitled to full faith and credit.

But the analogy is tenuous because the full faith and credit clause is limited to the courts of this nation. U.S. CONST. art. IV, § 1. A judgment creditor seeking to invoke the full faith and credit clause and have a judgment recognized in a Washington court is not required to file an action and take the matter before a judge. *See* ch. 6.36 RCW. Instead, a judgment creditor may simply file a properly authenticated copy of the judgment with the clerk of the court, who is required to accept it. RCW 6.36.025. Once the judgment is accepted, it is enforceable as if it were a judgment of a Washington court. RCW 6.36.025(1).

An act is ministerial when "'the law prescribes and defines the duty to be performed with such precision and certainty *as to leave nothing* to the exercise of discretion or judgment[,] . . . but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.'" *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 599, 229 P.3d 774 (2010) (quoting *State ex rel. Clark v. City of Seattle*, 137 Wash. 455, 461, 242 P. 966 (1926)). Unlike a clerk accepting a properly authenticated judgment of a court of this nation, a court considering a petition for recognition of a foreign country money judgment is doing more than performing a purely ministerial function. The act

11

articulates both discretionary and mandatory reasons to deny recognition, and, once the court has entertained the recognition action, the judge may need to exercise judgment to determine whether the specific judgment qualifies for recognition. RCW 6.40A.030, .040. A judge's decision on a CR 12(b)(2) motion also requires discretion and judgment. *Cf. LG Elecs., Inc.*, 186 Wn.2d 169.

Alterna acknowledges that "[i]n an enforcement proceeding, the presence of the defendant's property in the forum satisfies due process." Suppl. Br. of Resp't at 19-20 (citing *Shaffer*, 433 U.S. at 210 n.36). Alterna contends that same principle does not apply to a recognition action and, for this reason, contends SpiceJet's reliance on *Electrolines*, 260 Mich. App. 144, is misplaced. But in Washington, a foreign judgment is enforceable once it is recognized. RCW 6.40A.060. Alterna points to no statutory opportunity for a judgment debtor to challenge recognition once the judgment creditor seeks to enforce it. Footnote 36 of *Shaffer* speaks in terms of "an action to realize on" a debt. 433 U.S. at 210 n.36. It does not make a distinction between an enforcement or recognition action.

We agree with those courts that have concluded the recognition of a foreign judgment requires some jurisdictional nexus to the state. *See Dynaresource*, 667 S.W.3d at 926 (citing *Int'l Shoe Co.*, 326 U.S. 310); *AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 160 A.D.3d 93, 94, 73 N.Y.S.3d 1 (2018). We hold that, in the absence of general or specific jurisdiction, a debtor must have property in

Washington before a foreign country judgment may be recognized under chapter 6.40A RCW.

In this case, the trial court denied the CR 12(b)(2) motion to dismiss based on a mistake of law. We recognize that Alterna has preserved its argument that there are sufficient allegations and evidence in this record to establish jurisdiction in Washington State. We conclude an evidentiary hearing is necessary to resolve this question and, thus, notwithstanding the general dictate of RAP 13.7(b), remand to the trial court for further proceedings consistent with this opinion.

CONCLUSION

We hold that a judgment creditor seeking recognition of a foreign country money judgment in Washington must, in the absence of general or specific jurisdiction, establish that the judgment debtor has property in Washington to avoid a dismissal under CR 12(b)(2). We remand to the trial court for further proceedings consistent with this opinion.

González, J.

WE CONCUR:

_____

Montoya-Lewis, J.

Whitener, J.

_____

_____

Gordon McCloud, J.

Yu, J.P.T.

*Alterna Aircraft V B Ltd. v. SpiceJet Ltd.*

No. 103759-7

MADSEN, J.P.T.* (dissenting)—Dating back to 1895, the U.S. Supreme Court in

*Hilton v. Guyot*, 159 U.S. 113, 202, 16 S. Ct. 139, 40 L. Ed. 95 (1895), held that the

recognition and enforceability of a foreign judgment is a matter of comity.[1]  It found no

reason to treat a foreign-country judgment differently from the judgment of a sister state

as long as certain conditions are met to ensure due process.  It stated:

> [W]e are satisfied that, where there has been opportunity for a full and fair
> trial abroad before a court of competent jurisdiction, conducting the trial
> upon regular proceedings, after due citation or voluntary appearance of the
> defendant, and under a system of jurisprudence likely to secure an impartial
> administration of justice between the citizens of its own country and those
> of other countries, and there is nothing to show either prejudice in the court,
> or in the system of laws under which it was sitting, or fraud in procuring the
> judgment, or any other special reason why the comity of this nation should
> not allow it full effect, the merits of the case should not, in an action
> brought in this country upon the judgment, be tried afresh . . . .

*Id*. at 202-03.

---

* Justice Barbara Madsen is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

[1] The Court in *Hilton* also set forth a reciprocity requirement for comity to apply; however, this requirement is no longer followed in Washington.  *In re Est. of Toland*, 180 Wn.2d 836, 847 n.4, 329 P.3d 878 (2014).

No. 103759-7
Madsen, J.P.T., dissenting

In response, states adopted an array of different laws providing for the recognition of foreign judgments. Given the importance of foreign commerce and the need for uniformity in the treatment of foreign judgments, in 1962 the National Conference of Commissioners on Uniform State Laws developed the Uniform Foreign-Country Money Judgments Recognition Act (Uniform Act). H.B. REP. ON S.B. 5153, at 1, 61st Leg., Reg. Sess. (Wash. 2009). The Uniform Act serves to provide a clear statutory framework for recognizing foreign-country money judgments that encompasses the conditions set in *Hilton*.[2] Washington State adopted the Uniform Act in the 1970s. *Id*. at 2.

Under the Uniform Act, a foreign-country judgment that meets the criteria for recognition is given an effect analogous to that of a sister-state judgment under the full faith and credit clause of the United States Constitution, so that once recognized, the judgment is conclusive between the parties and enforceable in the same manner as a Washington judgment. *See* U.S. CONST. art. IV, § 1; *see* RCW 6.40A.060(1) (once recognized, the foreign judgment is "[c]onclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive"). In concluding that due process requires the existence of property in the forum before a foreign-country judgment can be recognized, the majority misreads the Uniform Act and undermines what the statute was designed to accomplish: achieving parity with the full faith and credit clause.

---

[2] The Uniform Foreign Money-Judgments Recognition Act was adopted in 1975 and revised in 2009. LAWS OF 1975, ch. 240, §§ 1-12; LAWS OF 2009, ch. 363, §§ 1-14.

2

DISCUSSION

The majority correctly notes that enforceability (and recognition) of foreign court judgments in state courts is largely a matter of state law, citing *Tonga Air Services, Ltd. v. Fowler*, 118 Wn.2d 718, 726, 826 P.2d 204 (1992). Majority at 8. The Washington legislature has spoken on this issue when it adopted the Uniform Act, ch. 6.40A RCW.

The majority also says that "nothing in the act requires a court to entertain a recognition action when it does not have the jurisdiction to do so." Majority at 7. In this I believe the majority is incorrect. RCW 6.40A.030(1) provides that a court "*shall recognize a foreign-country judgment*" and explicitly lists the grounds for nonrecognition. (Emphasis added.)

The word "shall" creates a duty as opposed to conferring discretion. *State v. Bartholomew*, 104 Wn.2d 844, 848, 710 P.2d 196 (1985). The Uniform Act provides both mandatory and discretionary grounds for nonrecognition. *See* RCW 6.40A.030.[3]

---

[3] The grounds for nonrecognition:

(2) A court of this state may not recognize a foreign-country judgment if:
(a) The judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
(b) The foreign court did not have personal jurisdiction over the defendant; or
(c) The foreign court did not have jurisdiction over the subject matter.
(3) A court of this state need not recognize a foreign-country judgment if:
(a) The defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend;
(b) The judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case;
(c) The judgment or the cause of action on which the judgment is based is repugnant to

No. 103759-7
Madsen, J.P.T., dissenting

What the Uniform Act does not do is provide courts with discretion to not recognize a foreign judgment based on lack of jurisdiction in its own court. "If the statutory standards are met and the appropriate action is filed in state court, the state court will recognize a foreign country judgment." FINAL B. REP. ON S.B. 5153, at 1, 61st Leg., Reg. Sess. (Wash. 2009). As long as the foreign judgment is "conclusive, final, and enforceable in the country of origin" and is not excluded on one of the grounds for nonrecognition, then it "must be recognized and enforced." *Id.*

Embedded in the grounds for nonrecognition are jurisdiction and due process considerations. For example, a court may not recognize a foreign-country judgment if the foreign court did not have personal or subject matter jurisdiction. RCW 6.40A.030(2)(b), (c). A court may also decide not to recognize a foreign judgment if "[t]he specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law." RCW 6.40A.030(3)(h).

As the U.S. Supreme Court held in *Hilton*, when our domestic concepts of due process are met, foreign-country judgments may be recognized in the same manner as sister-state judgments. This is the intent underlying the Uniform Act. The full faith and

the public policy of this state or of the United States;
 (d) The judgment conflicts with another final and conclusive judgment;
 (e) The proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court;
 (f) In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action;
 (g) The judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment; or
 (h) The specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law.

4

credit clause requires states to enforce judgments from sister states because those judgments are presumed to be rendered under comparable procedural safeguards and constitutional due process standards. Elias M. Medina, Comment, *Recognizing the Need to Recognize: A Proposed Foreign Judgment Recognition Statute and a Procedure for Enforcement in Louisiana*, 80 LA. L. REV. 915, 947 (2020). Foreign judgments, by contrast, carry no such presumption and therefore require a threshold judicial inquiry before enforcement. *Id*. "But, once a court in the United States looks behind the curtain and recognizes a foreign judgment, thereby affirming that the judgment comports with U.S. legal standards, the distinction between sister-state and foreign judgments disappears. The solution, then, is a procedural system that confers full faith and credit to foreign judgments upon recognition."[4] *Id*.

Accordingly, the Uniform Act can be understood as creating a procedural gateway through which foreign-country judgments, once determined under the Uniform Act to be recognizable, should receive the same interstate enforceability as sister-state judgments under the full faith and credit clause. *See also* Jay M. Zitter, Annotation, *Construction and Application of Uniform Foreign Money–Judgments Recognition Act*, 88 A.L.R. 5th 545 (originally published in 2001) ("The purpose of the codification of the common law in the Uniform Foreign Money–Judgments Recognition Act is to provide a uniform

---

[4] Although the distinction between foreign-country judgments and sister-state judgments largely disappears once a foreign-country judgment is recognized under chapter 6.40A RCW, such judgments are not enforced under the same statute that governs sister-state judgments, ch. 6.36 RCW. Rather, the point is that their manner of enforcement is functionally the same: once recognized, a foreign-country judgment is enforceable to the same extent as a judgment rendered by a court of Washington, just as a sister-state judgment is, once it is properly filed for enforcement.

mechanism for the recognition of foreign country money judgments in the same manner as judgments of sister states.").

The majority cites cases that have concluded that due process does not require personal jurisdiction or the presence of property in the jurisdiction prior to recognizing a foreign judgment but rejects them. I believe those cases fall in line with the Uniform Act.

For example, New York has adopted its own version of the Uniform Act. In *Lenchyshyn v. Pelko Electric, Inc.*, 281 A.D.2d 42, 46, 723 N.Y.S.2d 285 (2001), the New York court explained that the statute set forth the substantive requirements for recognition of foreign-country judgments. Those requirements include whether the foreign court had personal jurisdiction and subject matter jurisdiction, whether the tribunal was impartial, and whether the judgment was obtained through fraud or would violate public policy. *Id*. The court held that if those conditions are satisfied, "it is 'conclusive' and entitled to recognition." *Id*. In rejecting the argument that personal jurisdiction over the judgment debtor in New York was required for recognition, the court explained that the statutory scheme does not contemplate such a challenge to recognition of a foreign-country judgment. *Id*. at 49. The court further observed that recognition of a foreign-country judgment differs from recognition of a sister-state judgment because the latter is governed by the full faith and credit clause and carries a presumption that due process requirements were satisfied. *Id*. That distinction, however, does not imply that *additional* jurisdictional requirements must be met before recognition may be granted. *Id*.

The court reached a similar conclusion in *Abu Dhabi Commercial Bank PJSC v. Saad Trading, Contracting & Financial Services Co.*, 117 A.D.3d 609, 611, 986 N.Y.S.2d 454 (2014), holding that recognition of a foreign-country judgment does not depend on personal jurisdiction over the judgment debtor in New York because the statute imposes no such requirement and the debtor failed to establish any statutory ground for nonrecognition. The court also rejected the defendant's argument that the judgment debtor must possess property in the forum state, explaining that the statute does not require a judgment debtor to maintain assets in New York as a prerequisite to recognition. *Id*. at 612. Even if the debtor presently lacked assets in New York, the court reasoned, the creditor should have the opportunity to pursue enforcement if the debtor later acquires assets in the state. *Id*.

A Texas court similarly distinguished between recognition and enforcement, explaining that "a judgment creditor should be allowed the opportunity to obtain recognition of his foreign-money judgment and later pursue enforcement if or when the judgment debtor appears to be maintaining assets in Texas." *Haaksman v. Diamond Offshore (Bermuda), Ltd.*, 260 S.W.3d 476, 481 (Tex. App. 2008).

Under RCW 6.40A.030(4), SpiceJet has the burden of establishing that a ground for nonrecognition exists, yet it has not asserted any of the grounds for nonrecognition, nor has it contested the constitutionality of the statute. Instead, it argued that the lower court lacked jurisdiction due to SpiceJet's lack of property within Washington.

7

Notably, lack of personal jurisdiction is not a ground for refusing to recognize a judgment if certain conditions are met that ensure that the foreign tribunal issuing the judgment had jurisdiction over the defendant. *See* RCW 6.40A.040.[5] As the Court of Appeals in this case correctly noted, "[W]hile personal jurisdiction is required to establish the underlying liability in the originating forum, . . . it is not required to recognize the judgment on that established liability in the recognizing forum." *Alterna Aircraft V B Ltd. v. SpiceJet Ltd.*, 33 Wn. App. 2d 246, 258-59, 559 P.3d 1026 (2024).

Lastly, recognition and enforcement actions are distinct actions. RCW 6.40A.060(2) provides that if a foreign-country judgment is recognized, it is "[e]nforceable in the same manner and to the same extent as a judgment rendered in this state." At issue in this case is recognition of a foreign-country money judgment, not enforcement. Even if SpiceJet has no property in Washington, if none of the grounds for

---

[5] The criteria are as follows:

(1) A foreign-country judgment may not be refused recognition for lack of personal jurisdiction if:
  (a) The defendant was served with process personally in the foreign country;
  (b) The defendant voluntarily appeared in the proceeding, other than for the purpose of protecting property seized or threatened with seizure in the proceeding or of contesting the jurisdiction of the court over the defendant;
  (c) The defendant, before the commencement of the proceeding, had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved;
  (d) The defendant was domiciled in the foreign country when the proceeding was instituted or was a corporation or other form of business organization that had its principal place of business in, or was organized under the laws of, the foreign country;
  (e) The defendant had a business office in the foreign country and the proceeding in the foreign court involved a cause of action arising out of business done by the defendant through that office in the foreign country; or
  (f) The defendant operated a motor vehicle or airplane in the foreign country and the proceeding involved a cause of action arising out of that operation.

(2) The list of bases for personal jurisdiction in subsection (1) of this section is not exclusive. The courts of this state may recognize bases of personal jurisdiction other than those listed in subsection (1) of this section as sufficient to support a foreign-country judgment.

8

nonrecognition apply, then a lower court should be able to recognize the foreign judgment.[6]

In today's global economy of multinational corporations and digital commerce, the majority restricts the remedies available to creditors, making it more difficult to collect on judgments rendered through fair proceedings in foreign courts. I respectfully dissent.

Madsen, J.P.T.

Stephens, C.J.

Johnson, J.

Mungia, J.

---

[6] Requiring the presence of a judgment debtor's property in the state raises questions. For example, what evidence is required to establish the presence of the property in the state? Is attachment of the property required? Is the judgment limited to the value of the property present in the state? Ronald A. Brand, *The Continuing Evolution of U.S. Judgments Recognition Law*, 55 COLUM. J. TRANSNAT'L L. 277, 319-321 (2017). If this was a requirement for recognition, why did the legislature not include this basis in the statute?